**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 1, 2019

LETTER TO THE PARTIES

> RE: *Donja H. v. Commissioner, Social Security Administration*;
> Civil No. SAG-19-366

Dear Plaintiff and Counsel:

On February 8, 2019, Plaintiff Donja H., who appears *pro se*, petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claim for Supplemental Security Income. ECF 1. I have considered the parties' cross motions for summary judgment, and the medical record Plaintiff filed in response.[1] ECF 13, 14, 16. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff filed her claim for benefits on March 24, 2015, alleging a disability onset date of January 1, 2015. Tr. 184-85. Her claim was denied initially and on reconsideration. Tr. 77-87, 109-12. An Administrative Law Judge ("ALJ") held a hearing on July 12, 2017, at which Plaintiff was represented by counsel. Tr. 44-76. Following that hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 30-43. The Appeals Council denied Plaintiff's request for review, Tr. 1-7, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that Plaintiff suffered from the severe impairments of "obesity, degenerative disc disease of the lumbar spine, status post lumbar decompression and fusion surgery; degenerative disc disease of the cervical spine; osteoarthritis of the bilateral knees; type II diabetes mellitus; hypothyroidism; chronic pain syndrome; depressive disorder; and panic disorder." Tr. 32. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant cannot climb ladders, ropes, or scaffolds; cannot kneel, crouch, or balance; can frequently handle, reach, and finger; can occasionally climb ramps and stairs; can

---

[1] After the SSA filed its motion, the Clerk's Office sent a Rule 12/56 letter to Plaintiff, advising her of the potential consequences of failing to oppose the dispositive motion. ECF 15. Plaintiff did not file a formal opposition, but did file a letter from a treating source. ECF 16.

>   occasionally stoop; can have no exposure to extreme cold, vibrations, or hazards, such as unprotected heights; cannot use foot controls; can perform simple routine tasks; can apply common sense understanding to carry out detailed, uninvolved instructions; cannot perform production rate work where each job task must be completed in set time periods; is limited to making simple work related decisions with only occasional changes in routine work setting; and time off task during the work day can be accommodated by normal work breaks.

Tr. 36. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy, and, accordingly, that Plaintiff was not disabled. Tr. 42-43.

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the SSA's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons set forth below, the ALJ applied the correct legal standards and supported her conclusions with substantial evidence.

The ALJ proceeded in accordance with applicable law, using the appropriate sequential evaluation. The ALJ found in Plaintiff's favor at step one, that Plaintiff had not engaged in substantial gainful activity since her application date.[2] Tr. 32. At step two, the ALJ then considered the severity of each of the impairments that Plaintiff claimed prevented her from working. *See* Tr. 32-33; 20 C.F.R. § 416.920(a)(4)(ii). The ALJ determined that Plaintiff's hypertension, hyperlipidemia, and sinus tachycardia were not severe impairments because they were "adequately controlled with prescription medications" and "[did] not cause more than a minimal effect on the claimant's ability to perform basic work-related activities." Tr. 33. Regardless, after finding several of Plaintiff's other impairments to be severe, Tr. 32, the ALJ continued with the sequential evaluation and considered, in assessing Plaintiff's residual functional capacity ("RFC"), the extent to which her impairments limited her ability to work.

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the criteria of any listings. Tr. 33-35. In particular, the ALJ identified and considered Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 12.04 (depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). The ALJ also considered the following Social Security Rulings ("SSR") for Plaintiff's impairments which are not including in the listings: SSR 14-2p (diabetes), SSR 03-2p (chronic pain syndrome), SSR 14-3p (hypothyroidism), and SSR 02-01p (obesity).

---

[2] The ALJ found that Plaintiff had income exceeding the applicable substantial gainful activity threshold from short-term and long-term disability payments, but not from work activity. Tr. 32.

With respect to Listing 1.02, the ALJ explained that Plaintiff's impairment did not result in ineffective ambulation, defined as "having insufficient leg functioning to permit independent ambulation without the use of a hand-held assistive device that limits functioning of both arms." Tr. 33. The ALJ noted Plaintiff's occasional use of a cane, but found that Plaintiff was "able to perform her personal care, prepare meals, and to feed herself." *Id.* The ALJ also explained that Plaintiff's impairment did not meet any of the prongs under Listing 1.04 because (A) the record did not show nerve root compression, (B) the record did not show spinal arachnoiditis, and (C) Plaintiff was able to ambulate effectively. Tr. 33-34. The ALJ additionally determined that the non-listings impairments of diabetes, chronic pain syndrome, hypothyroidism, and obesity, alone or in combination with the other impairments, did not have effects that met the criteria of any listing. Tr. 34.

With respect to the two mental health listings, the ALJ engaged in the special technique for evaluation of mental impairments, but found no more than a moderate limitation in each of the four relevant functional areas. Tr. 34-35. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each functional area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 416.920a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the four areas: none, mild, moderate, marked, or extreme. *Id.* § 416.920a(c)(4). In order to satisfy the "paragraph B criteria", a claimant must exhibit either "marked" limitations in two of the four areas, or "extreme" limitation in one of the four areas. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b). Here, with no findings of marked limitation in any area, the ALJ concluded that Plaintiff's impairments did not satisfy the "paragraph B criteria." The ALJ also found that Plaintiff did not meet the "paragraph C criteria" of the mental health listings, which require "serious and persistent" disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment. *Id.* § 12.00 (G). I have carefully reviewed the record, and I agree that no listings are met in this case.

In considering Plaintiff's RFC, the ALJ determined that her "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but found that Plaintiff's testimony as to the intensity, persistence, and limiting effects of her symptoms was "only partially consistent with the medical evidence and other evidence in the record." Tr. 39; *see Chater*, 76 F.3d at 594 (explaining the Fourth Circuit's two-part test for evaluating a claimant's subjective complaints).

The ALJ's analysis relied upon Plaintiff's own reports to contradict her allegations of her symptoms' severity. Tr. 37 (noting that Plaintiff reported to her physician in August 2015 that she was much better after her spinal surgery); *id.* (noting that Plaintiff reported again in November 2015 that her symptoms had improved since her surgery); *id.* (noting that Plaintiff reported in June 2016 that her primary concern was her knees, and not her back); Tr. 38 (noting that Plaintiff reported in August and November 2016 that she reported great results from her knee treatment).

The ALJ reviewed the medical evidence and noted that, among other findings, Plaintiff's pain was controlled with medication. Tr. 37; *see, e.g.*, Tr. 610 ("[Plaintiff] has decreased her opioid medication significantly."). Despite writing that she experienced "some pain relief with surgery" in her SSA function report, Tr. 252, Plaintiff denied experiencing improvement after her surgery at the hearing, Tr. 58-60. The ALJ also noted that, although Plaintiff used a cane at times, "she also did not use a cane at times" and "generally exhibited a normal gait." Tr. 38. For support, the ALJ cited to medical records from SMART Pain Management which show that Plaintiff routinely exhibited a "normal gait, no limp," and "amubulat[ed] with no assistive devices." *See, e.g.*, Tr. 657, 663, 667, 671. Plaintiff testified that she used a cane "98 percent of the time." Tr. 62. In response to the ALJ's questions about the lack of Plaintiff's cane use reflected in the record, Plaintiff testified that she thought it was a mistake in the treatment notes. Tr. 63. Plaintiff could not show in the record where a cane was prescribed. Tr. 64.

Regarding Plaintiff's knee pain, the ALJ noted that Plaintiff received knee injections and went to physical therapy, and that she "reported great results from treatments in August and November 2016." Tr. 38. The Commissioner acknowledges that the record additionally shows "some abnormal clinical signs, including reduced upper extremity motor strength on some occasions and decreased sensation, motor strength, and reflex loss in some lower extremity muscles." ECF 14-1 at 10 n.3. While the record may contain conflicting evidence, the ALJ's conclusion that Plaintiff's allegations were generally inconsistent with the record was supported by substantial evidence. Thus, the ALJ appropriately considered Plaintiff's subjective statements, in addition to the objective results from her medical examinations, to determine her functional capabilities.

Looking at Plaintiff's mental health treatment, the ALJ noted the lack of evidence of emergency treatment for psychiatric problems, psychiatric hospitalization, or participation in a mental health day program. Tr. 38. He additionally noted that the record show that Plaintiff was consistently "fully oriented" with a normal mood and normal thought processes. *Id.*; *see, e.g.*, Tr. 493, 578, 645, 725.

Finally, the ALJ assigned weight to the opinions rendered by examining and non-examining medical sources. Tr. 39-41. The ALJ assigned "partial weight" to the opinions of the State agency consultants, Tr. 84, 99 (opining that Plaintiff could stand or walk up to two hours in an eight-hour workday), because subsequent evidence received after their examination of the record supported greater exertional limitations, Tr. 39. The ALJ assigned "little weight" to the opinions of the State agency psychiatric consultants, Tr. 81, 96 (opining that Plaintiff's mental impairments were non-severe), because the record, as a whole, supported a finding that Plaintiff's mental impairments were severe, Tr. 39. The ALJ also assigned "little weight" to the opinion of consultative psychiatric examiner, Dr. Phillips, that Plaintiff's depression appeared to be getting worse, Tr. 536, because it was the result of a one-time examination, lacked a function-by-function analysis, and did not provide specific limitations, Tr. 40.

The ALJ also appropriately considered and explained his evaluation of Plaintiff's treatment records and treating physicians' opinions. Tr. 40-41. The ALJ noted that Dr. Dean's March 2015 opinion that Plaintiff could not bend, twist, or lift more than ten pounds, and April 2015 opinion that Plaintiff could not "return to work yet," were "made within a short time after the claimant's March 2015 surgery and [were] reasonable for only a short time period." Tr. 40 (quoting Tr. 620). The ALJ gave no weight to Dr. Thompson-Richards's opinion that Plaintiff was unable to return to work because "disability determination is an issue reserved to the Commissioner."[3] *Id.*; *see* 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ gave little weight to Dr. Cohen's assessment that Plaintiff required a supportive care program and could not perform her activities of daily living without coming in for extended periods of time, Tr. 921, because it was overly restrictive, relied on Plaintiff's subjective reporting, and did not analyze Plaintiff's ability to perform basic work-related activities, Tr. 41. The ALJ assigned "little weight" to the opinions of Plaintiff's therapist, Bruce Ferguson, LCPC. Tr. 40. In June of 2015, Ferguson opined that Plaintiff could follow simple one- and two-step instruction, could perform routine, repetitive tasks depending on the physical intensity of the task, and could work without close supervision, but could not attend work on a regular basis due to depressive and anxiety symptoms. Tr. 517-518. In February of 2017, Ferguson opined that Plaintiff could not establish or maintain employment. Tr. 574. The ALJ noted that "[t]he course of treatment pursued [was] not consistent with what one would expect if the claimant were truly as limited as the therapist reported."[4] Tr. 40. A therapist is, additionally, not an acceptable medical source under Social Security Law. *Id.*; *see* 20 C.F.R. §§ 404.1527(f), 416.927(f). Lastly, the ALJ permissibly gave little weight to the Global Assessment of Functioning (GAF) scores and the statement of Plaintiff's friend. Tr. 41.

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, and given the evidence outlined above, I find that the ALJ supported his RFC determination with substantial evidence.

---

[3] The ALJ permissibly did not weigh an opinion of Dr. Thompson-Richards, supplied by Plaintiff, for Plaintiff's application to have her federal student loan discharged for reason of a medical impairment. Tr. 14.

[4] The Court notes that Plaintiff filed a letter from Bruce Ferguson, LCPC, on September 11, 2019, ECF 16. New evidence is material where it is not cumulative and there is "a reasonable possibility that the new evidence would have changed the outcome." *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir.2011) (citing *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991)). Ferguson's letter reiterates his earlier opinion that Plaintiff is "not able to maintain employment at this time" due to "depression and anxiety symptoms, and distorted, negative thoughts." ECF 16. In addition to the fact that it focuses on Plaintiff's condition in September, 2019, which postdates the ALJ's December, 2017, decision, Ferguson's letter is not cause for remand, because it is cumulative and would not affect the outcome of Plaintiff's case.

At steps four and five, relying on the vocational expert's ("VE's") testimony, the ALJ determined that Plaintiff was unable to perform her past relevant work. Tr. 41. However, in accordance with the VE's testimony, the ALJ determined that a person with Plaintiff's RFC could perform a restricted range of sedentary jobs existing in significant numbers in the national economy, including addressor, charge account clerk, and document preparer. Tr. 42.

The Commissioner acknowledges that the ALJ may have failed to resolve an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). ECF 14-1 at 17-18. The ALJ is required to address any conflicts or apparent conflicts between the VE's testimony and the information contained in the DOT. *See Pearson v. Colvin*, 810 F.3d 204, 208-10 (4th Cir. 2015); *see also* SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A Dec. 4, 2000) ("At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."). The Fourth Circuit has found that an apparent conflict exists between a limitation to "short, simple instructions" and a Reasoning Level of 2. *Thomas v. Berryhill*, 916 F.3d 307, 313-14 (4th Cir. 2019); *see also Keller v. Berryhill*, 754 F. App'x 193, 198 (4th Cir. 2018) (unpublished) (finding apparent conflict between limitation to short and simple instructions and Reasoning Level of 3).

According to the DOT, the addressor position requires a Reasoning Level of 2, and the charge account clerk and document preparer positions require a Reasoning Level of 3. U.S. Dep't of Labor, *Dictionary of Occupational Titles* §§ 209.587-010, 205.367-014, 249.587-018 (4th ed. 1991). A Reasoning Level of 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* App. C. A Reasoning Level of 3 requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

Here, the ALJ assessed Plaintiff's RFC as including the ability to "apply common sense understanding to carry out detailed, uninvolved instructions." Tr. 36. This language appears to follow the DOT's definition of Reasoning Level 2. Arguably, the ALJ should have made further inquiries of the VE to determine whether a conflict existed between Plaintiff's RFC and a job requiring a Reasoning Level of 3. However, the Commissioner is correct that any error is harmless, because the first representative occupation of addressor requires only a Reasoning Level 2. DOT § 209.587-010. A claimant is not disabled if she is able to engage in "work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). Thus, even if the ALJ failed to resolve an apparent conflict regarding the other two occupations, that error was harmless, because the other identified occupation of addressor (with 67,000 jobs nationally), Tr. 42, 73, exists in significant numbers. *See Lawler v. Astrue*, Civil Action No. BPG-09-1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (finding that where only 75-100 jobs existed in the region where plaintiff lived did "not undermine the ALJ's conclusion that plaintiff [was] capable of performing work that exists in significant numbers in the national economy.") (citing *Hicks v. Califano*, 600 F.2d

1048, 1051 n.2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number)).

The VE additionally testified that the jobs indicated could be performed by an individual who required the use of a cane for ambulation. Tr. 42. Because the VE's testimony constitutes substantial evidence to support the conclusion, the ALJ's determination must be affirmed.

For the reasons set forth herein, Defendant's Motion for Summary Judgment, ECF 15, is GRANTED. The SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States District Judge